**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHADRACK POYON NEYOR, | : | |
| | : | Civil Action |
| Plaintiff, | : | No. 07-826 (DRD) |
| | : | |
| v. | : | **O P I N I O N** |
| SCOTT WEBER, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

    SHADRACK POYON NEYOR, Plaintiff <u>pro se</u>
    Hudson County Correctional Center
    Kearny, New Jersey 07032

**DICKINSON R. DEBEVOISE, District Judge**

On February 20, 2007, Plaintiff SHADRACK POYON NEYOR (hereinafter "Plaintiff"), a native and citizen of Liberia and a felon under a final order of removal currently detained at Hudson County Correctional Center in Kearny, New Jersey, seeks to bring this action <u>in forma pauperis</u> without prepayment of fees pursuant to 28 U.S.C. § 1915. Plaintiff submitted his affidavit of indigence and institutional account statement, pursuant to 28 U.S.C. § 1915(a) (1998), and his complaint (hereinafter "Complaint"). Based on Plaintiff's affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), as of the date of this Opinion and accompanying Order, the Court

grants Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and will order the Clerk of the Court to file the Complaint. After thoroughly examining Plaintiff's submission, this Court dismisses Plaintiff's Complaint with prejudice for failure to state a claim upon which relief may be granted.

**STANDARD OF REVIEW**

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants. However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all

of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions." Id. Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

## BACKGROUND

On September 26, 2005, Plaintiff, then detained at the Middlesex County Adult Correction Center in New Jersey, filed a Petition for a Writ of Habeas Corpus (hereinafter "Petition") pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security (hereinafter "DHS"),[1] asserting that he was held in custody in violation of 8 U.S.C. § 1231(a)(6),

---

[1] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security. See 6 U.S.C. § 271(a). The Act transferred the functions of the Commissioner of the Immigration and Naturalization Service ("INS") to the Director of BCIS, see 6 U.S.C. § 271(b), and abolished INS. See 6 U.S.C. § 291. Accordingly, DHS replaced INS on March 1, 2003.

as clarified in Zadvydas v. Davis, 533 U.S. 678 (2001), and asserting that his removal to Liberia was not significantly likely to occur in the reasonably foreseeable future. See Neyor v. Gonzalez, 06-cv-01203 (JLL), Docket No. 1, Transfer Record, Pet. at 1, 3-5.

On April 12, 2006, the court presiding over Neyor v. Gonzalez, 06-cv-01203 (hereinafter "Neyor Court"), issued an order directing Respondents in Neyor v. Gonzalez (hereinafter "Respondents") to answer allegations set forth in Plaintiff's Petition. See id., Docket No. 12.

On May 1, 2006, prior to receiving Respondents' answer, the Neyor Court received Plaintiff's "Amendment" (1) asserting that Plaintiff's removal to Liberia was underway and effectuated by the Department of Homeland Security (hereinafter "DHS"), and (2) seeking injunctive relief preventing the DHS from removing Plaintiff to Liberia.[2] See id., Docket No. 16. Since Plaintiff's Amendment challenged Plaintiff's order of removal, on May 24, 2006, the Neyor Court construed it as a separate application that was improperly filed with the Neyor Court and issued an order transferring Plaintiff's Amendment to the United States Court of

---

[2] It appears that Plaintiff removal was deferred by the "Grant of a Deferral of Removal under Article III of the United Nations Convention Against Torture." See Pet., Neyor v. Gonzalez, 06-1203 (JLL), Docket No. 6, at 2. It further appears that Plaintiff's current removal is contemplated due to re-qualification of the status of Liberia for the purposes of the United Nations Convention Against Torture.

Appeals for the Third Circuit pursuant to the REAL ID Act, Pub. L. 109-13, Div. B, 119 Stat. 231 (May 11, 2005). See id., Docket Nos. 21 and 22. The action based on Plaintiff's Amendment was duly filed by the United States Court of Appeals for the Third Circuit on May 24, 2006, that is, the date when the Neyor Court rendered its decision. See Neyor v. Atty Gen. U.S.A., 06-cv-2807 (3d Cir.) (hereinafter "Appeal on Amendment").

On May 23, 2006, Respondents in Neyor v. Gonzalez filed their answer, see id., Docket No. 20, and on June 19, 2006, Plaintiff submitted his reply. See id., Docket No. 24. Basing its decision on the information provided in Respondents' answer and Plaintiff's submissions, the Neyor Court dismissed Plaintiff's Petition on July 6, 2006. See id., Docket Nos. 25 and 26. Plaintiff's time to file his notice of appeal with respect to the Neyor Court's dismissal expired on September 4, 2006, sixty days after the Neyor Court's decision. See Fed. R. App. P. 4(a)(B). Notably, Plaintiff did not file any notice of appeal with respect to the Neyor Court's dismissal. See generally, Neyor v. Gonzalez, 06-cv-01203 (JLL), Docket.

Plaintiff, however, proceeded with his Appeal on Amendment. See Neyor v. Atty Gen. U.S.A., 06-cv-2807. On June 19, 2006, Plaintiff filed his application to proceed in forma pauperis (hereinafter "IFP"), and sought appointment of pro bono counsel. See id., Docket Nos. 2 and 3. After obtaining IFP status and

having his motion for appointment of pro bono counsel deferred on July 17, 2006, see id., Docket No. 4, Plaintiff filed another appeal with the United States Court of Appeals for the Third Circuit, making effectively the same claims as those stated in his Amendment. See Neyor v. Atty Gen. U.S.A., 06-cv-4349 (3d Cir.) (hereinafter "Duplicate Appeal"). That filing was made on October 5, 2006, and twenty five days after that filing, Plaintiff made a motion for stay of his removal. See id., Docket No. 3.

On November 6, 2006, Respondents in the Duplicate Appeal submitted their response to the Court of Appeals, see id., Docket No. 4, and Plaintiff's administrative record was received by the Court of Appeals on the very next day. See id., Docket No. 5. On November 28, 2006, Plaintiff submitted his reply to the response of Respondents in the Duplicate Appeal. See id., Docket No. 6. However, on January 5, 2007, the Court of Appeals (1) consolidated Plaintiff's Appeal on Amendment and Duplicate Appeal (hereinafter "Consolidated Appeal"), and (2) basing its decision on Plaintiff's administrative record, denied Plaintiff's motion to stay removal on the grounds that Plaintiff is unlikely to succeed on the merits. See id., Docket 7; Neyor v. Atty Gen. U.S.A., 06-cv-2807, Docket No. 7. The record in the Consolidated Appeal concludes with a notice entered on January 5, 2007, that Plaintiff's brief is due on February 14, 2007, see Neyor v. Atty Gen. U.S.A., 06-cv-4349, Docket No. 10, and Neyor v. Atty Gen. U.S.A., 06-cv-2807, Docket

No. 10, hence indicating that Plaintiff's appeal in these consolidated Court of Appeals action is still underway.

On February 20, 2007, one week after his time to file a brief in the Consolidated Appeal action expired, Plaintiff submitted for filing his Complaint asserting that, "[o]n November 7, 2006, [Plaintiff] was transported to . . . Louisiana to be interviewed by the Liberian Consular.  In the course of [Plaintiff] being transported to Louisiana, [his] property, including . . . legal documents . . . were withheld . . . by ICE deportation officers." Compl. at 6A.  Since these documents were allegedly not returned to Plaintiff as of the date of Plaintiff's submission of his Complaint, Plaintiff now asserts that removal of these documents "violate[d Plaintiff's] civil rights and cause[d him] the loss of [his] immigration appeal in the Third Circuit." Id. at 6B, 6C. Plaintiff (1) maintains that extraction of Plaintiff's documents was executed in violation of proper procedures and denied Plaintiff access to courts, see id at 5A, 5B, 6, and (2) seeks the remedy in form of monetary damages and, in addition, "a temporary restraining order [to] restrain . . . Defendants from enforcing deportation against Plaintiff pending resolution of [the instant] case.³ See id. at 7.

---

³ Notably, Plaintiff marked his Complaint as "Emergency Complaint. See Docket No. 1-3.  Presumably, the emergency implied by Plaintiff is Plaintiff's forthcoming removal to Liberia which Plaintiff seeks to prevent or defer.

**DISCUSSION**

**A.    Access to the Courts**

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. See Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. See Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989); see also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other

litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996). Thus, a prisoner alleging a violation of his right of access (1) must demonstrate that a non-frivolous legal claim had been frustrated or impeded; and (2) must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue a claim or defense. See Lewis, 518 U.S. at 348-51, 354-55; Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

In the case at bar, Plaintiff failed to allege that the actions of Defendants caused him past or imminent "actual injury" by hindering his efforts to pursue a claim or defense. With respect to Plaintiff's potential appeal from the decision of the Neyor Court, Plaintiff's time to file his notice of appeal expired more than two months prior to the alleged wrongful extraction of Plaintiff's documents. Therefore, Plaintiff's appeal of the decision of the Neyor Court could not have been frustrated by the actions of Defendants.

As to Plaintiff's appeal in the Consolidated Appeal action which is still underway and, therefore, could not have been "lost" by definition, contrary to Plaintiff's contentions, the Court of Appeals record indicates that Plaintiff's access to the Court was unaffected by lack of the allegedly wrongfully extracted documents, and Plaintiff ongoing litigation efforts do not necessitate any

reference to the allegedly wrongfully extracted documents since: (1) two weeks after alleged wrongful extraction of Plaintiff's documents, Plaintiff successfully submitted his reply to Respondents' response in the Duplicate Appeal; (2) the Court of Appeals concluded that Plaintiff's claims were unlikely to be meritorious on the basis of Plaintiff's administrative record rather than lack of Plaintiff's submissions; and (3) Plaintiff sought this Court's assistance in returning the allegedly wrongfully extracted documents by submitting his Complaint one week *after* Plaintiff's time to file a brief with the Court of Appeals expired (even though Plaintiff was notified of his obligation to submit a brief on January 5, 2007, that is, a month and a half prior to Plaintiff's submission of his Complaint).  See Neyor v. Atty Gen. U.S.A., 06-cv-4349, Docket No. 10

Since Plaintiff failed to assert that the alleged wrongful extraction of the documents actually frustrated or is about to frustrate a non-frivolous action, Plaintiff's instant access to courts claim should be dismissed with prejudice.

B.   **Deprivation of Property**

Liberally construing Plaintiff's allegations, this Court may presume that, in addition to his access to courts claim, Plaintiff also sets forth a claim for wrongful deprivation of property in violation of the Due Process Clause of the Fourteenth Amendment.

However, an unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause if a meaningful post-deprivation remedy for the loss is available. See Hudson v. Palmer, 468 U.S. 517, 530-36 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986). In Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action. But see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d 410, 421 n.12 (3d. Cir. 2000) (citing United States v. James Daniel Good Real Property, 510 U.S. 43, 53 (1993)) (noting that, in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate).

If Defendants' actions of extracting Plaintiff's documents was unauthorized, Plaintiff has failed to state a claim because New Jersey does provide a post-deprivation remedy for unauthorized deprivation of property by public employees. See New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1 et seq. (2001). Since Plaintiff expressly noted that Defendants' actions were contrary to a proper procedure, see Ciompl. at 5A, 5B, 6, and Plaintiff has

alleged no facts suggesting that Defendants deprived him of property pursuant to an established state procedure, and this Court located no such established procedure, Plaintiff's claim for deprivation of property must be dismissed with prejudice. Compare N.J. Admin. Code 10A:1-11.1 et. seq. (2001) (clarifying that established state procedures require prison officials to preserve personal property of inmates).

## CONCLUSION

For the foregoing reasons, Plaintiff's application to proceed in forma pauperis is hereby GRANTED. Plaintiff's Complaint is DISMISSED WITH PREJUDICE for failure to state a claim upon which relief may be granted.

An appropriate Order accompanies this Opinion.

 /s/ Dickinson R. Debevoise 
  DICKINSON R. DEBEVOISE
  UNITED STATES DISTRICT JUDGE

Date:    February 26, 2007